# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LESEAN DOBY, | )<br>) Case No. 1:23-cv-16602<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| ZIDAN MANAGEMENT GROUP, INC., | )<br>) |
| Defendant. | ) |

## COMPLAINT

The Plaintiff, LESEAN DOBY ("Plaintiff"), by and through the undersigned, complains as to the conduct of ZIDAN MANAGEMENT GROUP, INC. ("Defendant") as follows:

**I. Introduction & Summary of the Illinois Biometric Information Privacy Act**

1. Plaintiff is a citizen and resident of Illinois residing in Chicago, Illinois.

2. Plaintiff alleges that Defendant violated Plaintiff's privacy rights as codified by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

3. BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

4. BIPA's express Legislative Findings provide as follows:

> (a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

1

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

5. BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data.

*See* 740 ILCS 14/15(a) and (b).

6. The Illinois Supreme Court has recognized that BIPA was enacted to preserve an individual's right to privacy and control over his/her/their biometric data:

> Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach.
>
> * * *
>
> The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." This is no mere "technicality." The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019)).

7. Defendant is a corporation organized under the laws of the state of Indiana with its principal place of business located in Indianapolis, Indiana.

8. As detailed below, Defendant utilizes technology that is subject to BIPA.

9. As detailed below, certain technology utilized by Defendant for its employees located in the state of Illinois required Defendant to obtain informed

3

written consent from its employees before Defendant was able to acquire the biometric identifiers and/or biometric information of its employees.

10. From at least April of 2022 through June of 2023, Defendant required at least some of its Illinois employees to use biometric information, including fingerprints, as a means to gain access to certain facilities or to otherwise have their work activity tracked and monitored.

11. Plaintiff was an employee of Defendant's from April 2022 until June of 2023.

12. Plaintiff, as a condition of his employment, was required to utilize his fingerprint to perform his regular job duties, including gaining access to various buildings so they could be cleaned and serviced by Plaintiff.

13. Throughout the course of his employment Plaintiff estimates that his fingerprints were scanned well over 500 times.

14. As described below, Defendant has violated Plaintiff's privacy rights in violation of rights and prohibitions set forth by BIPA.

## II. Jurisdiction and Venue

15. Section 20 of BIPA provides Plaintiff with a private right of action to assert violations of BIPA. *See, Rosenbach*, 432 Ill. Dec. at 660, 129 N.E.3d at 1203; *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020).

16. The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction. As of the filing of this Complaint, Plaintiff is a resident of the state of Illinois and plans to remain a resident of Illinois for the long run, and is therefore domiciled within the state of

Illinois, rendering Plaintiff a citizen of the state of Illinois. Defendant is an Indiana corporation with its principal place of business located in Indiana. As such, complete diversity exists between the parties.

17. Plaintiff's available damages exceed the amount in controversy requirement as Plaintiff is entitled to more than $75,000.00 in damages as a result of Defendant's unlawful conduct. Given the length of Plaintiff's employment with Defendant, the number of times Plaintiff would have provided his biometric information and/or identifiers during such time, and the per-violation liquidated damages available under the BIPA, it is plausible to allege that Plaintiff can recover more than $75,000.00 in statutory damages alone stemming from Defendant's conduct..

18. 28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

19. Venue is proper in this judicial district, as a substantial part of the events or omissions giving rise to Defendant's below described violations of BIPA took place within the state of Illinois and this judicial district.

20. Venue is also proper in this judicial district because Plaintiff is a citizen of the state of Illinois and seeks to vindicate his rights as provided by Illinois law.

## II. Defined Terms, Statutory Prohibitions and Allowable Damages

21. BIPA defines "Biometric identifier" as follows:

> "Biometric identifier" means a retina or iris scan, fingerprint,

voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

740 ILCS 14/10.

22. BIPA defines "Biometric information" and "Confidential and sensitive information" as follows:

> "Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.
>
> "Confidential and sensitive information" means personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

740 ILCS 14/10.

23. Section 15(a) of BIPA requires private entities to develop written

policies regarding the retention and destruction of "biometric identifiers" and "biometric information":

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

24. "Section 15(a) expressly conditions lawful retention of biometric data on the continuation of the initial purpose for which the data was collected. The BIPA requirement to implement data retention and destruction protocols protects a person's biometric privacy just as concretely as the statute's informed-consent regime." *Fox*, 980 F.3d at 1155.

25. "It follows that an unlawful retention of a person's biometric data is as concrete and particularized an injury as an unlawful collection of a person's biometric data." *Id.*

26. As set forth below, Defendant has violated Section 15(a) of BIPA because it appears to have failed to develop and publish written policies regarding the retention and destruction of "biometric identifiers" and "biometric information".

27. Section 15(b) of BIPA requires private entities to obtain informed written consent from persons before a private entity can obtain their biometric

7

identifiers and/or biometric information.

28. Section 15(b) of BIPA specifically states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

29. BIPA defines "[w]ritten release" as "informed written consent". 740 ILCS 14/10.

30. Informed-consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

31. Section 15(b) ensures that "consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Id.*

32. The failure to obtain informed consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant*, 958 F.3d at 619, 624, 626 (comparing a violation of section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

33. Defendant has violated Section 15(b) of BIPA because they collected

Plaintiff's biometric information without first obtaining informed written consent from Plaintiff.

34. Section 15(d) of BIPA prohibits private entities from disclosing, redisclosing, or otherwise disseminating a person's biometric identifier or biometric information without first obtaining informed written consent of the subject.

35. Upon information and belief, Defendant has violated Section 15(d) of BIPA because it has disclosed, redisclosed, and/or otherwise disseminated Plaintiff's biometric identifier and/or biometric information without his informed written consent.

36. In enacting BIPA, the Illinois legislature determined that violations of BIPA should result in awards of liquidated damages.

37. Section 20 of BIPA provides that "[a] prevailing party may recover for each violation: … (1) against a private entity negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater" and that "[a] prevailing party may recover for each violation: … (a) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater". 740 ILCS 14/20(1)-(2).

38. Additionally, in enacting BIPA, the Illinois legislature determined that "[a] prevailing party" in a BIPA action "may recover … (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses" and injunctive relief. 740 ILCS 14/20(3)-(4).

### III. Defendant's Violations of BIPA

39. Defendant has violated BIPA through its utilization of Plaintiff's and its employees' fingerprints and hand scans as a means for such individuals to perform their job duties and by gathering Plaintiff's and its employees' biometric information and utilizing such biometric identifiers and/or biometric information without their employees' informed written consent.

40. From at least April 2022 through June 2023, and upon information and belief, Defendant required Plaintiff to utilize his fingerprints and biometric information in order to perform his job duties.

41. As alleged herein, Defendant failed to properly disclose to Plaintiff and that its system would collect the "biometric identifiers" and/or "biometric information" (hereafter "Biometric(s)") of Plaintiff without his informed written consent.

42. Defendant has collected the Biometrics of Plaintiff in violation of the prohibitions set forth by BIPA.

43. Each time Plaintiff performed his job or went to a new building, he was required to provide his biometric information and identifiers.

44. Each time Plaintiff did so, Defendant's system scanned his fingerprints to create a detailed map or digital depiction of his fingerprints.

45. Each time Plaintiff did so, Defendant scanned his fingerprints, which resulted in Defendant obtaining and/collecting Plaintiff's unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

46. Each time Defendant did so, it obtained Plaintiff's unique "biometric identifier" or "biometric information" *without* Plaintiff's informed written consent.

47. Defendant has failed to fully and properly disclose to Plaintiff that its time keeping system captured, or otherwise obtained Plaintiff's unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

48. Defendant failed to obtain Plaintiff's informed written consent prior to obtaining his unique "biometric identifier" or "biometric information" as these terms are defined by BIPA.

49. Defendant has failed to disclose how it uses the "biometric identifier" and "biometric information" it has obtained from Plaintiff.

50. Defendant has failed to disclose to Plaintiff whether it *has* shared his "biometric identifier" or "biometric information" with third parties.

51. Defendant has failed to disclose to Plaintiff whether they *will* share Plaintiff's "biometric identifier" or "biometric information" with third parties.

52. Defendant has failed to disclose to Plaintiff whether it has sold Plaintiff's "biometric identifier" or "biometric information" to third parties.

### IV. Causes of Action

### Count I – Asserting Violations of Sections 15(a) of BIPA

53. Plaintiff alleges and reasserts Paragraphs 1-52 as if fully set forth herein.

54. Informed-consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

55. Section 15(a) of BIPA states as follows:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for *permanently* destroying biometric identifiers and biometric information *when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity*, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

See, 740 ILCS 14/15(a) (emphasis supplied).

56. Defendant has failed to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information" as required by 740 ILCS 14/15(a).

57. On information and belief, Defendant does not destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied" as required by 740 ILCS 14/15(a).

58. On information and belief, Defendant has failed to develop, publicly disclose, and otherwise comply with a data-retention schedule and guidelines for the permanent destruction of "biometric identifiers" and "biometric information".

59. Defendant's failure to comply with BIPA's retention-and-destruction policy results in Article III injury. "An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does." *Fox v. Dakkota*

12

*Integrated Sys., LLC*, 980 F.3d 1146, 1154-55 (7th Cir. 2020).

60. On information and belief, Defendant does not destroy a user's "biometric identifiers" or "biometric information" "within 3 years of the individual's last interaction with the private entity" as required by 740 ILCS 14/15(a).

61. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing to develop and publicly disclose an easily explained and/or understood data-retention schedule for the *permanent* destruction of "biometric identifiers" and/or "biometric information."

62. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing to develop and publicly disclose easily explained and/or understood data-retention guidelines for the permanent destruction of "biometric identifiers" and/or "biometric information."

63. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing to comply with a data-retention schedule and guidelines for the permanent destruction of "biometric identifiers" and/or "biometric information."

64. Defendant's violations of Section 15(a) of BIPA has resulted in the *unlawful retention* and sharing of Plaintiff's "biometric identifiers" and/or "biometric information" with currently unknown third-parties.

65. Defendant's *failure to comply* with a retention-and-destruction policy has harmed Plaintiff where Defendant's unlawful retention of "biometric identifiers" and/or "biometric information" appears to go *beyond* the time limits

set by section 15(a). *See, e.g., Fox*, 980 F.3d at 1149 and 1155 (finding a "concrete and particularized" harm where the plaintiff alleged that the defendant violated the "full panoply" of section 15(a) requirements).

66. Defendant violated BIPA by collecting, using, modifying and/or storing the "biometric identifiers" and/or "biometric information" of Plaintiff without Plaintiff's informed written consent.

67. Plaintiff has suffered damages in the form of liquidated damages and provided by 740 ILCS 14/20(1)-(2).

WHEREFORE, Plaintiff respectfully request that this Honorable Court provide Plaintiff with the following relief:

a. Liquidated damages for negligent violations of Section 15(a);
b. Liquidated damages for intentional and/or reckless violations of Section 15(a);
c. Reasonable attorney's fees and costs;
d. Enjoining Defendant from further violations of Section 15(a); and;
e. Award any other relief deemed equitable and just.

**Count II – Asserting Violations of Section 15(b) of BIPA**

68. Plaintiff alleges and reasserts Paragraphs 1-67 as if fully set forth above:

69. Section 15b of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" (1) informs the subject in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information. *See* 740 ILCS 14/15(b)(1)-(3).

70. As set forth *supra.*, Defendant violated of Section 15(b)(1) of BIPA by failing to inform Plaintiff in writing that its system was storing or collecting Plaintiff's "biometric identifiers" or "biometric information". 740 ILCS 14/15(b)(1).

71. As set forth *supra.*, Defendant violated of Section 15(b)(2) of BIPA by failing to inform Plaintiff in writing of the specific purpose and length of term for which Plaintiff's "biometric identifiers" and/or "biometric information" was "being collected, stored, and used." 740 ILCS 14/15(b)(2).

72. As set forth *supra.*, Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release executed by Plaintiff a before Defendant collected Plaintiff's "biometric identifiers" and/or "biometric information". 740 ILCS 14/15(b)(3).

73. Violations of Section 15(b) of BIPA result in concrete injuries:

> As the Illinois Supreme Court recognized in *Rosenbach*, the informed- consent regime laid out in section 15(b) is the heart of BIPA. The text of the statute demonstrates that its purpose is to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained. The judgment of Illinois's General Assembly is that the sensitivity of biometric information and the risk of identity theft or other privacy or economic harm that may result from its dissemination, necessitates that people be given the opportunity to make informed choices about to whom and for what purpose they will relinquish control of that information. Compass's failure to abide by the requirements of section 15(b) before it collected Smart Market users' fingerprints denied Bryant and others like her the opportunity to consider whether the terms of that collection and usage were acceptable given the attendant risks.
>
> This was not a failure to satisfy a purely procedural requirement. Rather, as in Robertson, Compass withheld substantive information to which Bryant was entitled and thereby deprived her of the ability to give the informed consent section 15(b) mandates. Equipped with the missing information, she may have chosen not

15

to use the vending machines and instead brought her own lunch or snacks. Or she may have opted for the convenience of the machines. She did not realize that there was a choice to be made and what the costs and benefits were for each option. This deprivation is a concrete injury-in-fact that is particularized to Bryant. She thus meets the requirements for Article III standing on her section 15(b) claim.

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

74. The failure to obtain informed consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant*, 958 F.3d at 619, 624, 626 (comparing a violation of Section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

75. Defendant's collection, use, modification, monetization and/or storage of Plaintiff's "biometric identifiers" and/or "biometric information" - without informed written consent - violates Section 15(b).

76. Plaintiff has utilized Defendant's system in a manner that has resulted in Defendant collecting, using, modifying, monetizing and/or storing Plaintiff's "biometric identifiers" and/or "biometric information" in violation of the prohibitions and requirements set forth by BIPA.

77. Defendant did not obtain the informed written consent of Plaintiff to collect, use, modify, monetize and/or store Plaintiff's "biometric identifiers" and/or "biometric information".

78. Defendant violated BIPA by collecting, using, modifying and/or storing the "biometric identifiers" and/or "biometric information" of Plaintiff without Plaintiff's informed written consent.

79. Plaintiff has suffered damages in the form of liquidated damages

16

and provided by 740 ILCS 14/20(1)-(2).

WHEREFORE, Plaintiff respectfully request that this Honorable Court provide Plaintiff with the following relief:

   a. Liquidated damages for negligent violations of Section 15(b);
   b. Liquidated damages for intentional and/or reckless violations of Section 15(b);
   c. Reasonable attorney's fees and costs;
   d. Enjoining Defendant from further violations of Section 15(b);and
   e. Award any other relief deemed equitable and just.

### Count III – Asserting Violations of Section 15(d) of BIPA

80. Plaintiff alleges and reasserts Paragraphs 1-79 as if fully set forth above:

81. Section 15(d) prohibits a private entity in possession of biometric data from disclosing or disseminating that data except in certain circumstances, such as obtaining a subject's consent. 740 ILCS 14/15(d).

82. Defendant has violated Section 15(d) of BIPA because, upon information and belief, they have disclosed, redisclosed, and/or otherwise disseminated Plaintiff's "biometric identifiers" and/or "biometric information" without Plaintiff's informed written consent.

83. The Seventh Circuit has held that the unlawful disclosure of biometric data invades an individual's private domain "just as surely as an unconsented collection or retention does." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021)

84. The unlawful disclosure of an individual's biometric data inflicts an injury that satisfies Article III. *Id.*

WHEREFORE, Plaintiff respectfully requests that this Honorable Court provide Plaintiff with the following relief:

a. Liquidated damages for negligent violations of Section 15(d);
b. Liquidated damages for intentional and/or reckless violations of Section 15(d);
c. Reasonable attorney's fees and costs;
d. Enjoining Defendan from further violations of Section 15(d); and
e. Award any other relief deemed equitable and just.

## Jury Demand

Plaintiff demands a jury trial.

Dated: December 8, 2023

Respectfully submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the N.D. Illinois
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com

s/Eric D. Coleman
Eric D. Coleman, Esq. #6326734
Counsel for Plaintiff
Admitted in the N.D. Illinois
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(331) 307-7648 (phone)
(630) 575-8188 (fax)
ecoleman@sulaimanlaw.com